IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>JOSE LEON JOHNSON,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO SUPPRESS**<br><br>Case No. 2:20-cr-00397-RJS-CMR<br><br>Chief District Judge Robert J. Shelby<br>Magistrate Judge Cecilia M. Romero |

Before the court is Defendant Jose Leon Johnson's Motion to Suppress.[1]  For the reasons explained below, the Motion is GRANTED.

## BACKGROUND

In the early morning of February 17, 2020, West Valley City Police received a call that a man and woman were arguing outside a home and the man was threatening the woman with a firearm.[2]  Officers Ryan Hortin and Ardeni Prutina responded after dispatch notified them of the reported aggravated domestic disturbance.[3]  En route to the home, and while awaiting backup, the officers received another call from dispatch that the male suspect had left the home in a white GMC Yukon (the Yukon).[4]  The officers then observed the Yukon drive past them, and attempted a traffic stop.[5]  The driver did not yield to the officers' lights and sirens.[6]  A pursuit

---

[1] Dkt. 31, *Motion to Suppress*; Dkt. 62, *Memorandum in Support of Motion to Suppress*.

[2] *See* Dkt. 60, *Evidentiary Hearing Transcript* at 7:8–22, 34:8–16.

[3] *Id.* at 7:8–25, 34:5–12, 41:3–5, 63:25–64:2.

[4] *Id.* at 8:1–4, 16:22–17:12, 34:23–35:2, 42:1–3.

[5] *Id.* at 8:5–10, 34:17–22 35:3–6, 42:4–6.

[6] *Id.* at 8:11–14, 35:7–11, 42:4–6.

ensued, during which the driver committed several reckless speeding and stop violations on public roadways.[7]

After about five minutes of pursuit, the Yukon returned to the original dispatch address.[8] The suspect drove through the closed front gate, jarring it open, and stopped the Yukon on the front grass, inside the fence, approximately twelve feet from the roadway.[9]  The suspect exited the Yukon, ignored the officers' commands to stop, and ran into the house.[10]  The Yukon was left running, with the headlights on, keys in the ignition, and doors closed.[11]

After about ten minutes, additional law enforcement arrived, including Officer Daniel Nielson and Sergeant Shane Beardshall.[12]  The officers moved to contain the area and used a public address system to perform "call outs" instructing those in the home to come outside.[13] Eventually, an adult female exited the house, followed by three young children sometime later.[14] The female was identified as Paola Olivas Guerrero (Olivas), who told officers the male suspect was not in the house and she was the owner of the house and the Yukon.[15]  After the children exited the house, officers cleared it, finding no trace of the male suspect.[16]  Searching the area

---

[7] *Id.* at 8:15–25, 35:12–36:2.

[8] *Id.* at 9:4–6, 17:3–12, 36:3–6, 42:7–9, 68:5–8.

[9] *Id.* at 9:7–14, 10:9–17, 17:19–18:2, 25:24–26:4, 26:17–23, 51:1:3.  Johnson notes some conflicting testimony regarding the distance from the car to the road.  However, the parties appear to agree the car was parked some twelve feet from the roadway, within the residence's fenced-in front yard.  *See* Dkt. 65, *Reply to Government's Response to Defendant's Motion to Suppress* at 2.

[10] Dkt. 60 at 9:7–19, 36:7–16.

[11] *Id.* at 9:20–25, 10:6–8, 36:17–22, 50:17–25.

[12] *Id.* at 13:7–21, 37:17–22, 44:20–23, 67:17–21.

[13] *Id.* at 13:11–21, 13:25–14:7, 38:1–3, 53:15–23, 68:24–69:1, 70:2–12.

[14] *Id.* at 14:8–15, 38:4–8.

[15] *Id.* at 25:17–23, 26:20–27:2, 45:23–46:6, 65:16–19, 70:19–71:1.

[16] *Id.* at 14:18–15:3, 38:9–22.

around the house, officers discovered footprints heading north.[17]  A canine was deployed, but the

suspect was not found or arrested that day.[18]  The suspect was later identified as the Defendant,

Jose Leon Johnson.[19]

While some officers searched the house and surrounding area, other officers questioned

Olivas.[20]  Olivas was uncooperative and gave false, misleading, and evasive responses.[21]

Officers eventually learned that the driver was Johnson, Olivas' boyfriend, who lived at the

house with her and had taken the car with her permission.[22]  During their conversation, Sgt.

Beardshall told Olivas the police would be taking possession of the Yukon because her boyfriend

had fled from police in it.[23]  At no point did officers ask Olivas' permission to search the Yukon

or obtain a warrant to do so.[24]  Olivas was released without any charges and was told to stay

away from the Yukon.[25]

Officer Nielson impounded the Yukon, noting in his report that the primary reason for

impoundment was because the vehicle was used to flee from officers.[26]  Other officers likewise

identified and reported "fleeing" as the reason for impoundment.[27]  When informed that her

---

[17] *Id.* at 15:4–11.

[18] *Id.* at 15:7–11, 16:8–10, 25:10–13, 30:18–20, 38:20–39:2, 51:7–8.

[19] *Id.* at 64:24-65:4.

[20] *Id.* at 68:11–21.

[21] *Id.* at 31:1–9, 64:3–8, 64:11–19, 66:1–2.

[22] *Id.* at 30:21–25, 40:14–19 (expressing some confusion whether the suspect lived at the residence or merely stayed there sometimes); *Id.* at 31:15–21, 49:13–50:11, 71:8–13 (clarifying that Olivas eventually made clear it was Johnson driving the vehicle and that he lived with her as her boyfriend).

[23] *Id.* at 66:3–20, 71:4–7.

[24] *Id.* at 31:22–24, 65:20–25, 72:18–21, 74:5–12, 75:21–76:1.

[25] *Id.* at 25:14–16, 72:11–17.

[26] *Id.* at 22:14–15, 25:1–4, 28:23–29:3, 39:22–40:1, 43:15–18, 53:24–54:6, 54:6–15, 55:2–9, 55:19–56:10, 59:24–60:3, 60:14–19, 61:7–24.

[27] *Id.* at 23:4–24:14, 39:16–17.

vehicle was going to be impounded, Olivas asked officers why she could not keep it.[28]  Sgt.

Beardshall informed her that the Yukon could not remain in her possession because of her

dishonesty and uncooperativeness; he then instructed officers to "process it for evidence."[29]

Pursuant to West Valley City Police Department Policy, officers conducted an inventory search

as part of the impound.[30]  During the search, officers found four firearms and multiple drugs,

including methamphetamine, heroin, marijuana, and mushrooms.[31]

On April 2, 2020, the United States presented a magistrate judge with a Complaint and

warrant seeking Defendant Johnson's arrest.[32]

## PROCEDURAL HISTORY

On December 2, 2020, the Grand Jury returned an Indictment charging Johnson with the

following counts:

- Count 1: Possession of Heroin with Intent to Distribute, 21 U.S.C. § 841(a)(1);
- Count 2: Possession of a Firearm in Furtherance of a Drug Trafficking Crime, 18 U.S.C. § 924 (c)(1)(A); and
- Count 3: Felon in Possession of Firearms, 18 U.S.C. § 922(g)(1).[33]

On December 11, 2020, Johnson appeared before Magistrate Judge Jared C. Bennett for

an initial appearance and detention hearing.[34]  Johnson entered a plea of not guilty, was

appointed counsel, and submitted to detention.[35]

---

[28] *Id.* at 73:4–24.

[29] *Id.* at 19:20–20:6, 58:17–59:4, 72:5–10, 73:4–24, 76:8–16.

[30] *Id.* at 55:19–56:10.

[31] *Id.* at 15:12–17, 15:2–7, 56:21–57:3.

[32] Dkt. 1, *Complaint*; Dkt. 2, *Sealed Arrest Warrant*.

[33] Dkt. 5, *Indictment*.  The case was unsealed on December 7, 2020.  Dkt. 9, *Order Granting Motion to Unseal Case*.

[34] Dkt. 15, *Minute Entry for Proceedings on December 11, 2020*.

[35] *Id.*

On September 1, 2021, Johnson filed the instant Motion to Suppress.[36]  In the Motion, Johnson seeks suppression of all evidence obtained in the warrantless search of the Yukon.[37] Johnson asserts his standing to challenge the search, based on his operation of the vehicle with permission from Olivas, the registered owner.[38]

Following a status conference, the court decided to address separately the issues of: (1) Johnson's standing to challenge the search and (2) the legality of the search.[39]  On October 27 and November 3, 2021, evidentiary hearings were held on the issue of Johnson's Fourth Amendment standing to challenge the search.[40]  Following the presentation of evidence and oral argument, the court concluded Johnson had a reasonable expectation of privacy in the vehicle, based on his legitimate possessory interest, despite not being the registered owner.[41]  The court concluded Johnson had met his burden of establishing his standing to challenge the search of the vehicle.[42]

On January 3, 2022, an evidentiary hearing was held concerning the legality of the search.[43]  The United States called as witnessesOfficers Hortin, Prutina, Nielson, and Sgt. Beardshall.  Testimony was taken regarding the pursuit, subsequent impoundment, and search of

---

[36] Dkt. 31.

[37] *Id.* at 1.

[38] *Id.*

[39] Dkt. 34, *Minute Entry for Proceedings on September 29, 2021.*

[40] Dkt. 42, *Minute Entry for Proceedings on October 27, 2021*; Dkt. 47, *Minute Entry for Proceedings on November 3, 2021.*

[41] Dkt. 54, *Minute Entry for Proceedings on December 2, 2021.*

[42] *Id.*

[43] Dkt. 59, *Minute Entry for Proceedings on January 3, 2022.*

the Yukon.[44]  Counsel for Johnson cross-examined all four government witnesses but called no

additional witnesses.

At the close of that hearing, the court set a briefing schedule for the Motion.[45]  On April

18, 2022, the court heard oral argument.[46]  The Motion to Suppress is now ripe for review.

## LEGAL STANDARD

The Fourth Amendment protects the public from "unreasonable searches and seizures."[47]

Unless one of the many exceptions to the general warrant requirement applies,[48] authorities must

first obtain a warrant based on probable cause for a search and seizure to be lawful.[49]  Evidence

seized in violation of the Fourth Amendment is precluded from admission under the exclusionary

rule,[50] which excludes "both the primary evidence obtained as a direct result of an illegal search

or seizure," as well as "evidence later discovered and found to be derivative of an illegality, the

so-called fruit of the poisonous tree."[51]  In determining whether a violation has occurred, the

"ultimate touchstone of the Fourth Amendment is reasonableness."[52]

"[T]he defendant bears the burden of proving whether and when the Fourth Amendment

was implicated,"[53] and "[t]he government then bears the burden of proving that its warrantless

---

[44] *See* Dkt. 60.

[45] Dkt. 59.

[46] Dkt. 68.

[47] U.S. Const. amend IV.

[48] *See Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971).

[49] *See Terry v. Ohio*, 392 U.S. 1, 20 (1968) (citations omitted).

[50] *Mapp v Ohio*, 367 U.S. 643, 648 (1961).

[51] *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (citation omitted).

[52] *United States v. Metts*, 748 F. App'x 785, 788 (10th Cir. 2018) (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)).

[53] *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020) (quoting *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017)).

actions were justified" by an exception to the warrant requirement.[54]  If the government

establishes that an exception to the warrant requirement applies, the action is deemed

constitutional.[55]

## ANALYSIS

Having already found Johnson has standing to challenge the search,[56] the court turns to

the legality of the search.  First, the court addresses the United States' argument that Johnson lost

any privacy interest in the vehicle when he abandoned it in Olivas' front yard and fled the scene.

Second, the court addresses the United States' argument that the warrantless search of the

vehicle was an inventory search, incident to it being lawfully impounded, and therefore excepted

from the warrant requirement.

### I.    Johnson did Not Abandon his Reasonable Expectation of Privacy in the Vehicle and its Contents

Under the Fourth Amendment, a warrantless search and seizure of property deemed

"abandoned" is "not unreasonable" because "[w]hen individuals voluntarily abandon property,

they forfeit any expectation of privacy in it that they might have had."[57]  Property is abandoned

for Fourth Amendment purposes when: (1) the individual subjectively intended to relinquish

ownership of the property, or (2) the individual's continued expectation of privacy in the

property is no longer objectively reasonable.[58]  Although abandonment implicates the

defendant's Fourth Amendment standing, by questioning whether he has lost a previously held

---

[54] *Id.* (quoting *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994)).

[55] *Id.* (citing *United States v. Maestas*, 2 F.3d 1485, 1491-92 (10th Cir. 1993)).

[56] Dkt. 54.

[57] *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995).

[58] *See United States v. Juszczyk*, 844 F.3d 1213, 1214 (10th Cir. 2017).

reasonable expectation of privacy, it is the government's burden to establish abandonment by a preponderance of the evidence.[59]

Here, the United States challenges whether Johnson's continued expectation of privacy in the vehicle was objectively reasonable after he evaded police, drove the Yukon through Olivas' gate, left it parked in her front yard, and fled the area on foot.[60]  Johnson responds that he did not abandon the vehicle because his expectation of privacy remained objectively reasonable when he left the Yukon inside the fenced front yard of the private home where both he and Olivas resided.[61]  The court agrees with Johnson.

Both parties compare the instant case to *United States v. Chavez*, in which the Tenth Circuit recently affirmed the district court's conclusion that the defendant had "maintained an objectively reasonable expectation of privacy when he drove the vehicle some distance from the initial traffic stop to his place of residence, leaving it only a few feet from the house, with the door closed, and his dog still inside."[62]  The Tenth Circuit distinguished the facts of *Chavez* from other authority finding abandonment of vehicles left in public places, "not on private property outside the defendant's residence."[63]  Likewise, each of the authorities the United States cites

---

[59] *See United States v. Denny*, 441 F.3d 1220, 1226 (10th Cir. 2006) (citing *United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003) (recognizing the burden is on the United States to establish abandonment by a preponderance of the evidence)).

[60] Dkt. 64, *Government's Response to Defendant's Motion to Suppress* at 4–5.

[61] Dkt. 65 at 3–5.

[62] 985 F.3d 1234, 1240–41 (10th Cir. 2021) (internal quotation marks and citation omitted).

[63] *Id.* at 1241 (citing *United States v. Falsey*, 566 F. App'x 864, 865 (11th Cir 2014) (unlocked car left, with keys inside, in business parking lot); *United States v. Smith*, 648 F.3d 654, 660 (8th Cir. 2011) (car left running in Taco Bell drive-through lane); *United States v. Edwards*, 441 F.2d 749, 751 (5th Cir. 1971) (car left running on side of public highway)).

here for its theory of abandonment are distinguishable from this case as they involved property left in public places.[64]

The United States seeks to distinguish *Chavez* based on three facts.[65]  First, the defendant in *Chavez* fled police and drove the vehicle 200-300 feet up a dirt road before leaving it outside his residence and running on foot.[66]  In contrast, Olivas' residence had a shorter setback from the road, and Johnson left the vehicle approximately twelve feet from the road.[67]  Second, in *Chavez*, officers learned almost immediately that the defendant lived in the trailer next to where he parked the vehicle.[68]  Here, officers learned sometime later in their interaction with Olivas that Johnson resided in the home with her.  Third, the defendant in *Chavez* was apprehended on the property and taken into police custody the same night the vehicle was searched.[69]  Johnson was not apprehended the night officers searched the vehicle, having fled the scene on foot.[70]

The court finds these distinctions unavailing.  Like the defendant in *Chavez*, Johnson, while being pursued by police, "drove the vehicle some distance . . . to his place of residence,

---

[64] Dkt. 64 at 5 (citing *United States v. Jones*, 707 F.2nd 1169, 1172 (10th Cir. 1983) (satchel discarded outside building); *United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir. 2011) (car left in Walmart parking lot); *Smith*, 648 F.3d at 600 (car left in Taco Bell drive-through lane); *United States v. Quintana-Grijalva*, 332 F. App'x 487, 491 (10th Cir. 2009) (car driven off highway and left tangled in wire fence); *United States v. Soto-Beniquez*, 356 F.3d 1, 36 (1st Cir. 2003) (drugs and guns thrown out a window) (citing *Able v. United States*, 362 U.S. 217, 241, (1960) (items left in hotel room after defendant paid the bill and vacated the room)); *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005) (car left on public roadside)).

[65] Dkt. 64 at 6.

[66] *Id.*

[67] *See Id.* ("Defendant left the vehicle approximately 12 feet from the road"); Dkt. 65 at 2 ("vehicle was parked closer to the house than the road, there being 12 feet to the road and only eight feet to the house.").

[68] *See* Dkt. 64 at 6.

[69] *Id.*

[70] *Id.*

leaving it only feet from the house, with the door closed" and the engine running.[71]  Whether the vehicle was 200 or twelve feet off the public roadway is ultimately immaterial.  What matters is that Johnson left the vehicle on private property outside his residence.[72]  To hold otherwise would, as Johnson points out, grant residents of urban or suburban areas distinctly less Fourth Amendment protection over their vehicles than residents of rural or wealthier neighbors where homes may be further set back from public roadways.[73]  Whether officers learned immediately, or after a matter of time, that Johnson resided at the home where he left the vehicle is also insignificant.  It is undisputed that, when the Yukon was searched, officers had been informed the driver lived at the home where it was parked.[74]  Further, it is unclear if it matters at all when or whether officers knew Johnson resided at the private home where he left the vehicle—officers knew the Yukon was registered to Olivas, who lived at the residence where it was left.[75]  Lastly,

---

[71] *Compare Chavez*, 985 F.3d at 1237, 1240–41 (affirming the district court's conclusion that Chavez "maintained an objectively reasonable expectation of privacy when he drove the vehicle some distance from the initial traffic stop to his place of residence, leaving it only feet from the house, with the door closed, and his dog still inside.") (internal quotation marks omitted), *with* Dkt. 62 at 3 ("The yard in which the Yukon parked is private property.  . . . The Yukon was left running, with the doors closed, headlights on, and keys in the ignition."), *and* Dkt. 64 at 2 ("The suspect returned to the original dispatched address hitting open a closed gate and parking in the front yard. . . . The suspect . . . went into the residence while leaving the [Yukon] running with the keys in the ignition and its lights on.").

[72] *See Chavez*, 985 F.3d at 1241 (car not abandoned when left on private property outside driver's residence); *see also United States v. Moody*, No. 16-00115-01-CR-W-HFS, 2017 WL 2313387, at *3 n.2 (W.D. Mo. Mar. 20, 2017) (assuming, without deciding, car not abandoned when left on private property where driver resided), *report and recommendation adopted*, 2017 WL 2312926 (W.D. Mo. May 26, 2017); *United States v. Mathis*, 653 F. Supp. 2d. 806, 813, 820 (E.D. Tenn. 2009) (car not abandoned when left, locked, in private driveway of home under renovation—not the driver's residence); *United States v. Scrivner*, 680 F.2d 1099, 1100 (5th Cir. 1982) (trucks not abandoned when left, unlocked, on or in warehouse premises leased by defendant).

[73] *See* Dkt. 65 at 4–5.

[74] *See Id.* at 5.

[75] *See Mathis*, 653 F. Supp. 2d. at 813, 820 (car not abandoned when left in private driveway of home, although not the driver's residence); *Scrivner*, 680 F.2d at 1100 (unclear whether officers knew, prior to search, that both the trucks and warehouse premises where they were parked were leased by defendant).

that Johnson fled the scene and was not arrested the night of the search does not sufficiently demonstrate he abandoned the vehicle after parking it in his own front yard.[76]

The circumstances here do not evidence Johnson's intent to relinquish his interest in the vehicle nor that his continued expectation of privacy was objectively unreasonable. Evading the officers' attempted traffic stop, Johnson returned to his home, drove through the front gate, and left the vehicle parked inside the fenced-in front yard, a few feet from the home. That Johnson left the vehicle running, with the keys in the ignition, and fled on foot may, under different circumstances, evidence abandonment. However, countervailing evidence makes it more likely than not that Johnson intended to maintain his possessory interest in the vehicle and retained an objectively reasonable expectation in its privacy. Rather than abandoning the vehicle along the roadside, or on other public property, Johnson returned home and left the vehicle in the yard of his place of residence. Having left the home only minutes earlier, he undoubtably believed the vehicle's owner was still at her residence. Based on the totality of the circumstances, the court concludes Johnson did not abandon the vehicle or his reasonable expectation of privacy in the vehicle and its contents.

## II.    The Vehicle was not Lawfully Impounded

It is undisputed that officers did not obtain a warrant to search the vehicle.[77] Absent a valid warrant, the government must prove, by a preponderance of the evidence, that the seizure or search was nonetheless justified by an exception to the warrant requirement.[78] If the

---

[76] See *Scrivner*, 680 F.2d at 1100 (defendants not present at warehouse when trucks were located and only apprehended and arrested when they attempted to claim the impounded trucks).

[77] See Dkt. 62 at 15; *see generally* Dkt. 64.

[78] *Neugin*, 958 F.3d at 930.

government establishes that an exception to the warrant requirement applies, the action is deemed constitutional.[79]

One such exception to the warrant requirement, applicable to the seizure and removal of vehicles, is for law enforcement's "community caretaking functions."[80] The Tenth Circuit has elaborated on the constitutionality of community-caretaking impoundments, holding that "impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale."[81] A validly-impounded vehicle may then be subject to an inventory search "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."[82]

Here, the United States argues the vehicle was lawfully impounded and the subsequent search was a valid inventory search.[83] The United States asserts impounding the vehicle from private property was "justified by a standardized policy and a reasonable, non-pretextual rationale of community caretaking."[84] Johnson disputes both these elements and argues that impounding the vehicle was unconstitutional.[85] The court agrees with Johnson.

---

[79] *Id.* (citing *Maestas*, 2 F.3d at 1491-92).

[80] *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976).

[81] *United States v. Sanders*, 796 F.3d 1241, 1248 (10th Cir. 2015).

[82] *Colorado v. Bertine*, 479 U.S. 367, 372 (1987) (discussing *Opperman*, 428 U.S. 369–77).

[83] Dkt. 64 at 6–9.

[84] *Id.* at 6–7 (quoting *United States v. Woodard*, 5 F.4th 1148, 1152 (10th Cir. 2021)).

[85] Dkt. 65 at 6–9.

a. **The Impound was not Conducted Pursuant to a Standardized Government Policy**

The parties do not dispute that the impounded vehicle was located on private property and was neither obstructing traffic nor creating an imminent threat to public safety.[86]  Thus, impoundment could have been constitutional only if justified by: (1) standardized government policy, and (2) a reasonable, non-pretextual community-caretaking rationale.[87]  While applicable standardized policies may grant officers discretion in deciding whether to impound and inventory a vehicle, the ultimate exercise of that discretion must proceed "according to standardized criteria, and not in bad faith or for the sole purpose of investigation."[88]  This "ensures that police discretion to impound vehicles is cabined rather than uncontrolled."[89]

The United States asserts the decision to impound the vehicle was made pursuant to West Valley City Police Department Policy § 510.3.[90]  Section 510.3 states, in part, that a vehicle "shall be impounded whenever it is needed for the furtherance of an investigation or prosecution of the case or when the community caretaker doctrine would reasonably suggest that the vehicle should be impounded[.]"[91]  The United States argues impounding the vehicle was justified by this policy because "it had been involved in felony fleeing and the vehicle was needed to further

---

[86] *See* Dkt. 64 at 7; Dkt. 65 at 6; *cf. United States v. Trujillo*, 993 F.3d 859, 869 (10th Cir. 2021) (finding impoundment of a vehicle was reasonable where it partially obstructed the entrance to a gated community and thus "threatened both the 'safety and convenience' of any returning complex residents") (quoting *Opperman*, 428 U.S. at 369).

[87] *See Sanders*, 796 F.3d at 1248.

[88] *Id.* at 1245 (quoting *Untied States v. Taylor*, 592 F.3d 1104, 1108 (10th Cir. 2010)); *see also Bertine*, 479 U.S. at 375 (explaining that exercise of police discretion is not prohibited "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity").

[89] *Sanders*, 796 F.3d at 1249.

[90] Dkt. 64 at 7.

[91] *Id.* at 7 (quoting Government's Exhibit 4, *West Valley Police Department Policy Manual* § 510.3 Impounds at Arrest Scenes).

the investigation into the fleeing incident."[92]  This is consistent with Officer Nielson's indication of "fleeing" as the reason for impound on the State Tax Impound Form as well as other officers' reference to Johnson's flight from officers' attempted traffic stop as their reason for seizing the vehicle.[93]

Johnson responds that § 510.3 does not justify impounding the vehicle for three reasons. First, by its title and content, § 510.3 applies to "impounds at arrest scenes" and Johnson was not apprehended or arrested the night the vehicle was impounded.[94]  Second, even if § 510.3 was applicable, the government's justification for impoundment was unfounded because "nothing about the vehicle nor anything that could be found within [it] would assist in further investigation or prosecution of the flight crime."[95]  Lastly, Johnson points to subsequent portions of § 510.3, giving examples of circumstances when officers should consider "leaving a vehicle at the scene in lieu of impounding, provided the vehicle can be lawfully parked and left in a reasonably secured and safe condition" including "[w]henever the licensed owner of the vehicle is present, willing and able to take control of any vehicle not involved in criminal activity[,]" and "[w]henever the vehicle otherwise does not need to be impounded and the owner requests that it be left at the scene."[96]  Johnson asserts such circumstances were present in this case, indicating that, even if § 510.3 were applicable, the vehicle still should have been left at the scene rather than impounded.[97]

---

[92] *Id.*

[93] *Id.* (citing Government's Exhibit 3, *State Tax Impound Form*); *Id.* at 8 ("Sgt. Beardshall told Ms. Olivas early on in the investigation that the vehicle was going to be impounded due to its involvement in the fleeing incident.").

[94] Dkt. 65 at 6–7 (citing Government's Exhibit 4).

[95] *Id.* at 7.

[96] Government's Exhibit 4, § 510.3 Impounds at Arrest Scenes; *see also* Dkt. 65 at 7.

[97] Dkt. 65 at 7–8.

As an initial matter, the court agrees with Johnson—on its face § 510.3 applies to impounds made when the driver or person in control of a vehicle is arrested.[98]  The United States acknowledges that § 510.3 "addresses Impounds at Arrest Scenes" but contends that it nonetheless justifies impoundment because Johnson "made himself unavailable for arrest by fleeing the scene."[99]  The United States offers no substantive explanation for such an expansive interpretation of the policy, nor does the court see any justification for interpreting the policy's repeated references to "arrest" or "arrestee" as including "attempted arrest" or "absconded individual."  Had West Valley City intended for its policy to include impoundment of vehicles whose driver commits a violation and then flees on foot, it could have drafted a policy to do so. Further, the community caretaking exception's requirement that impoundment must be justified by a standardized policy is concerned with "whether standardized criteria cabin the discretion of law enforcement officers conducting impoundments, and [] whether the law enforcement officers followed them—i.e., whether their discretion was actually cabined."[100]  The broad policy interpretation the United States urges, despite the policy's plain meaning, would contravene the interest in officers adhering to standardized criteria that cabin their exercise of discretion.

Regardless, even if § 510.3 were broadly interpreted to include individuals who fled before they could be arrested, or if Johnson had indeed been arrested at the scene, § 510.3 would still not justify impounding the vehicle.  The United States asserts § 510.3 justifies impoundment because the vehicle "had been involved in felony fleeing" and "was needed to further the

---

[98] See Id. at 6–7; see also Government's Exhibit 4 § 510.3 Impounds at Arrest Scenes ("Whenever a person in charge or in control of a vehicle is arrested, it is the policy of this department to provide reasonable safekeeping by impounding the arrestee's vehicle subject to the exceptions described below.").

[99] Dkt. 64 at 7.

[100] United States v. Venezia, 995 F.3d 1170, 1177 (10th Cir. 2021).

investigation into the fleeing incident."[101]  Section 510.3 does provide that "the vehicle shall be impounded whenever it is needed for the furtherance of an investigation or prosecution of the case[.]"[102]  But, as Johnson notes, the elements of felony fleeing "are simple, and not proven with physical evidence found in the car after it has been stopped."[103]  And the record is devoid of any statement, by any officer involved, concerning how further investigation of fleeing required seizure of the vehicle.  It follows that the vehicle was not "needed for the furtherance of an investigation or prosecution" of Johnson's flight from police.[104]

More fundamentally, the argument advanced by the Untied States likely steers the "for the furtherance of an investigation or prosecution of the case" clause of §510.3 into direct tension with the Fourth Amendment.[105]  On its face, the justification offered by the United States amounts to an attempted end-run around the Fourth Amendment, suggesting there is no warrant required to seize a vehicle for impound solely to search it for evidence in furtherance of an investigation or prosecution.  Municipalities may not circumvent Constitutional safeguards through adoption of local policies.

---

[101] Dkt. 64 at 7.

[102] Government's Exhibit 4.

[103] Dkt. 65 at 7 (citing UTAH CODE ANN. § 41-6a-210 (West 2018) ("An operator who receives a visual or audible signal from a law enforcement officer to bring the vehicle to a stop may not: (i) operate the vehicle in willful or wanton disregard of the signal so as to interfere with or endanger the operation of any vehicle or person; or (ii) attempt to flee or elude a law enforcement officer by vehicle or other means.")); *cf. Woodard*, 5 F.4th at 1158 ("[P]olice had no need to preserve evidence by impounding the car."); *Venezia*, 995 F.3d at 1182 ("[I]mpounding Venzia's vehicle would not have provided further evidence of the traffic violations or outstanding warrant for which Venzia was arrested.").

[104] Government's Exhibit 4.  The United States also suggests the impound was justified because "[i]t is very likely that the vehicle contained evidence of who was driving [it] during the fleeing incident and evidence of the armed domestic incident, especially since the driver left the residence immediately after the armed domestic incident was called into dispatch."  Dkt. 64 at 9.  However, this justification does not comport with officers' statements prior to impounding the vehicle or with the justification listed on the State Tax Impound Form.  *See Id.* at 8 (citing Government's Exhibit 1, *Body Camera Footage* at 4:21:14 (Sgt. Beardshall telling Olivas, "It's gonna be our car because he just fled from police in it")); Government's Exhibit 3 (noting reason for impound as "Other: Fleeing").

[105] Government's Exhibit 4.

Because § 510.3 is inapplicable to this situation, and because the impoundment was not needed in furtherance of an investigation or prosecution, the court will not consider whether the exceptions to impoundment at arrest scenes are applicable to the circumstances here. Impounding the vehicle was not justified by the standardized policy of the West Valley City Police Department, namely §510.3, and therefore the impoundment and subsequent search were unconstitutional.

> **b. The Impound was Not Justified by a Reasonable, Non-Pretextual Community-Caretaking Rationale**

Even if impoundment had been justified under West Valley City Police Department Policy, to be constitutional, impounding the vehicle must also be justified by a reasonable, non-pretextual community-caretaking rationale.[106] This element "guards against arbitrary impoundments" and requires that impoundments made pursuant to standardized policy still be reasonable and not "'in bad faith or for the sole purpose of investigation.'"[107] "Protection against unreasonable impoundments, even those pursuant to a standardized policy, is part and parcel of the Fourth Amendment's guarantee against unreasonable searches and seizures."[108]

Noting the difficulty of determining whether impoundment was justified by a reasonable, non-pretextual community-caretaking rationale, in *United States v. Sanders* the Tenth Circuit highlighted the following list of non-exclusive factors:

> (1) whether the vehicle is on private or public property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle); (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment.[109]

---

[106] *See Sanders*, 796 F.3d at 1248.

[107] *Id.* at 1249–50 (citing *Taylor*, 592 F.3d at 1108).

[108] *Id.* at 1250.

[109] *Id.*

The United States does not address the *Sanders* factors in its papers, instead contending the totality of the circumstances demonstrates that officers had a reasonable, non-pretextual reason for impounding the vehicle.[110]  The United States first asserts that officers' reason for impounding the vehicle, due to its involvement in the fleeing incident, was non-pretextual.[111] Additionally, the United States asserts leaving the vehicle with Olivas, its registered owner, was not a practical alternative to impoundment because she "was clearly uncooperative and obstructive of the officers' investigation."[112]  In sum, the United States argues "the officers acted reasonably in their decision to impound the vehicle on a community caretaking basis because the vehicle was involved in a crime, likely contained evidence of criminal offenses, and could not be left to Olivas who might further obstruct the ongoing investigation."[113]

In moving to suppress the evidence obtained from the impoundment and subsequent inventory search of the vehicle, Johnson recites the *Sanders* factors and argues that at least four of those factors weigh against finding a reasonable, non-pretextual community caretaking rationale.[114]  The court agrees.

First, it is undisputed that the vehicle was parked on private property.[115]  Indeed, it was parked within the fence enclosing Olivas' front yard.  Thus, the first *Sanders* factor weighs against finding a reasonable, non-pretextual community caretaking rationale justifying impoundment.

---

[110] Dkt. 64 at 8.

[111] *Id.* ("The officers did not make up the fleeing incident and the actions by the officers demonstrate that this impound was non-pretextual.").

[112] *Id.*

[113] *Id.* at 9.

[114] Dkt. 62 at 16–17.

[115] *See Id.* at 3, 16; Dkt. 64 at 2.

Second, the property owner did not want the vehicle removed.  Rather, Olivas, who was both the owner of the property where the Yukon was parked and the owner of the Yukon itself, objected to its removal.[116]  "[T]he second *Sanders* factor goes to the private property owner's enjoyment of his or her private property, i.e., whether the vehicle's presence caused a nuisance."[117]  It looks to whether the owner of the private property was consulted and expressed a preference that officers remove the vehicle from the property.[118]  Where, as here, the property owner objects to the removal of the vehicle from her property, this factor weighs against finding a reasonable, non-pretextual community caretaking rationale.

Third, rather than impounding the vehicle, it could have been left with the registered owner on her private property.  Olivas was present and expressed her interest in retaining the Yukon.[119]  Although Olivas was uncooperative in answering the officers' questions, and provided false information,[120] the officers' reluctance to leave the Yukon with her on these bases is suggestive of an interest in investigating or obtaining evidence rather than a community-caretaking rationale.  The United States' concern with losing evidence or obstructing an investigation points to an interest in just that: obtaining evidence or investigating—not a non-pretextual interest in community caretaking.  Therefore, the third *Sanders* factor waighs against finding a reasonable, non-pretextual community caretaking rationale.

Fourth, Johnson notes that "the vehicle was not necessarily implicated in a crime, although it was the vehicle in which the driver fled."[121]  It is uncontested that the vehicle was

---

[116] Dkt. 62 at 16 (citing Dkt. 60 at 72:18–21).

[117] *Venezia*, 995 F.3d at 1179 (10th Cir. 2021).

[118] *See, e.g., Id.*; *Woodard*, 5 F.4th at 1155–56; *Sanders*, 796 F.3d at 1251.

[119] *See* Dkt. 62 at 16.

[120] *See* Dkt. 64 at 8.

[121] Dkt. 62 at 16.

used by a suspect in an alleged aggravated domestic incident to flee from police.[122]  However, accepting the United States' argument that the vehicle may have "contained evidence of who was driving [it] during the fleeing incident and evidence of the armed domestic incident," does not favor finding warrantless impound of the Yukon was reasonable.[123]  Impoundment cannot reasonably be justified by a non-pretextual community-caretaking rationale on this factor alone. To do so would bypass the Tenth Circuit's charge that impoundments pursuant to a community-caretaking justification "must not occur for *sole purpose* of investigation."[124]

A partial investigatory motive will not invalidate an otherwise lawful impoundment justified by a reasonable interest in community caretaking.[125]  But here, the only justification provided for impounding the car was to investigate potential evidence of crimes.  There was no independent interest in community caretaking.  A standalone interest in obtaining or preserving evidence related to a crime is not a community-caretaking rationale and should rise or fall on its own consideration under the Fourth Amendment, not under the pretext of community caretaking.

Fifth and finally, the owner of the vehicle, Olivas, did not consent to the impoundment.[126] She was present at the scene and overtly demonstrated her interest in the Yukon being left on her property.  Thus, the final *Sanders* factor weighs against finding a reasonable, non-pretextual community caretaking rationale.[127]

---

[122] *See Id.* at 2; Dkt. 64 at 1–2.

[123] Dkt. 64 at 9.

[124] *Sanders*, 796 F.3d at 1251 (citing *Taylor*, 592 F.3d at 1108) (emphasis added); *cf. Bertine*, 479 U.S. at 373 ("[T]here was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation.").

[125] *See Trujillo*, 993 F.3d at 871 ("[E]ven if the district court had found that [officers were] motivated in part by an investigatory motive (it did not), that would still be insufficient ground to require suppression."); *Id.* (collecting cases).

[126] Dkt. 62 at 16 (citing Dkt. 60 at 72:18–21).

[127] *See, e.g., Woodard*, 5 F.4th at 1158.

To summarize, the Yukon was parked on private property, the property owner desired that it remain there, the vehicle could safely be left with its owner rather than being impounded, and the vehicle's owner objected to it being impounded.  While it may be reasonable for officers to believe the Yukon was potentially implicated in a crime based on the information available at the time, warrantless impoundments may not occur for the sole purpose of investigation. Because West Valley City Police Department's standardized policy did not justify impoundment and the stated rationale for impoundment does not suggest a non-pretextual community-caretaking rationale, impounding the vehicle from private property was unconstitutional on several independent bases.

## CONCLUSION

The United States has failed to meet its burden of proving either that Johnson abandoned his privacy interest in the vehicle or that impounding the vehicle fell within a recognized exception to the warrant requirement.  Because the Fourth Amendment was implicated and the seizure of the vehicle was not conducted pursuant to a valid warrant or an exception to the warrant requirement, Johnson's Motion to Suppress[128] is GRANTED.

DATED this 26th day of April, 2022.

BY THE COURT:

ROBERT J. SHELBY

United States Chief District Judge

---

[128] Dkt. 31.